**John DOE**

v.

**UNITED STATES of America.**

**No. 91 CIV 7934 (KC).**

United States District Court,
S.D. New York.

April 1, 1993.

**MEMORANDUM ENDORSEMENT**

CONBOY, District Judge.

The United States of America ("the Government") has moved for dismissal of this action, or, in the alternative, for summary judgment. For the reasons that follow, the Government's motion for summary judgment is granted.

### I.  Background

In his amended complaint, John Doe ("Doe"), a former attorney, alleges that he has been "operated" as a confidential informant by various, unspecified agencies of the United States. Doe also alleges that two agents of the Federal Bureau of Investigation ("the FBI") prepared an FBI "302 Report" that mentioned Doe's confidential informant status. Doe further asserts that during the course of a criminal prosecution of former clients of his, this 302 Report was "wrongfully, willfully, and wantonly" provid-

ed to each of the defendants counsel in that action by the Government. The factual circumstances of the complained-of disclosure are not alleged in the amended complaint other than to aver that the disclosure was not pursuant to any court order directing the government to disclose plaintiff's identity. Instead, the amended complaint alleges conclusorily that the disclosure was made at some unspecified time "during the pendency of the aforesaid criminal case" by

> agents of the Federal Bureau of Investigation and/or agents of the United States Department of Justice, including agents of the United State's Attorney's Office...."

These "agents" are nowhere identified in the amended complaint.

The Government's Rule 3(g) statement and various declarations submitted by the Government with the instant motion make clear the circumstances in which the Government published the 302 report. Doe has not submitted a Rule 3(g) statement, affidavits, or any other documents that controvert the facts as set forth in the Government's 3(g) statement and other papers. Therefore, all of the facts set forth by the Government in its 3(g) statement are deemed admitted. *See* Local Rule 3(g).

The uncontroverted facts establish that the disclosure of the FBI 302 Report at issue here occurred in connection with a prosecution of Richard Roe and others. The disclosure was made for two purposes. First, the 302 Report was submitted by the Government prosecutors to Roe in opposition to a suppression motion by Roe that had challenged the admissibility of the Report. Second, the 302 Report, which summarized an interview between FBI agents and Roe, was submitted in order to discharge the prosecutor's obligation pursuant to Fed.R.Crim.Proc. 16(a)(1)(A) to provide Roe with all of his prior statements.

In his amended complaint, Doe alleges, *inter alia,* that the disclosure of the 302 report has exposed him and his family to possible retaliation. Moreover, Doe asserts that from the time he learned of the disclo-

sure of his name, he has suffered emotional distress and anxiety from his fear of possible retaliation. Doe brought this suit against the Government under the Federal Tort Claims Act ("FTCA").

## II. Legal Analysis

Section 2674 of the FTCA provides that

> [w]ith respect to any claim under this chapter, the United States shall be entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim, *as well as any other defenses to which the United States is entitled.*

28 U.S.C.A. § 2674 (West Supp.1992) (emphasis added).[1] Though we have found no cases that interpret the meaning of the emphasized passage, we believe that by adding this passage Congress intended to make clear that one of the defenses to which the government is entitled under the FTCA is prosecutorial immunity.

Sound public policy supports this interpretation. In the *Bivens* and the Section 1983 context, the Supreme Court has indicated three policy reasons behind the availability of absolute immunity for prosecutors: (i) to ensure that prosecutorial decisions are made free from the fear of personal liability; (ii) to save prosecutors from the oppressive burden of having to defend in court the many discretionary decisions made by prosecutors as part of the advocacy process; (iii) to ensure that post-trial decision makers, *e.g.,* appellate judges, reviewing criminal cases are not influenced by the fact that "a post-trial decision in favor of the accused might result in the prosecutor's being called upon to respond in damages for his error or mistaken judgment." *See Imbler v. Pachtman,* 424 U.S. 409, 424–27, 96 S.Ct. 984, 992–93, 47 L.Ed.2d 128 (1976); *see also Schloss v. Bouse,* 876 F.2d 287, 290 (2d Cir.1989) (Because a prosecutor is responsible for scores of indictments, and because each prosecution necessarily in-

---

**1.** This quoted portion of § 2674, as well as other portions of the FTCA, were amendments Congress passed in 1988. The amendments apply

"to all claims, civil actions, and proceedings pending on, or filed on or after [November 18, 1988]." Pub.L. No. 100–694 § 8(b).

volves many separate decisions, "forcing him to defend these decisions could impose intolerable burdens").[2] While the first and third reasons for prosecutorial immunity discussed by the *Imbler* court do not apply in the FTCA context, the second reason does apply. We believe that the second reason, by itself, strongly supports our conclusion that § 2674 of the FTCA indicates that the United States is entitled to assert the defense of prosecutorial immunity in FTCA cases.

To the extent that the language of § 2674 is ambiguous, the legislative history of the statute makes clear that Congress intended the United States to be able to assert the defense of prosecutorial immunity. *See* H.R.Rep. No. 700, 100th Cong., 2d Sess. 5, *reprinted in* 1988 U.S.Code Cong. & Admin.News 5945, 5948. ("The United States [will] [ ] be able to continue to assert other functional immunities, such as Presidential and *prosecutorial immunity*, recognized in the constitution and judicial decisions." (emphasis added)).

Having ascertained that the United States is entitled to assert the defense of prosecutorial immunity in FTCA cases, we must now determine whether that defense is applicable to the case before us. As one recent decision has explained:

> The decision to grant or deny a prosecutor absolute immunity depends more on the function being performed than on the office of the defendant. *See Robison v. Via,* 821 F.2d 913, 918 (2d Cir.1987); *Taylor v. Kavanagh,* 640 F.2d 450, 452 (2d Cir.1981). A prosecutor is absolutely immune when her actions directly concern the pre-trial or trial phases of a case. *See Taylor v. Kavanagh,* 640 F.2d at 452. "For example, the swearing of warrants to insure a witness' attendance at trial, the falsification of evidence, or the failure to drop charges until immediately before trial, have been held to be prosecutorial activities for which absolute immunity applies." *Id.* (citations

omitted). In fact, the solicitation and subornation of perjured testimony, the withholding of evidence, and the introduction of illegally-seized evidence at trial have been held to create no liability for damages because these activities of the prosecutor were "intimately associated with the judicial phase" of the prosecution. *Id.* (citations omitted).

*Johnson v. Scott,* 1993 WL 36131, *2 (E.D.N.Y.1993).

The activities giving rise to the disclosure complained of here—compliance with criminal discovery obligations in preparation for trial, and the litigation of a pretrial motion—are clearly part of the "judicial phase" of a criminal prosecution within the meaning of *Imbler* and its progeny. Therefore, the United States is entitled to assert absolute immunity to Doe's FTCA action.[3]

The Second Circuit's decision in *Rivera v. United States,* 928 F.2d 592 (2d Cir.1991), does not mandate a different result. In *Rivera,* the plaintiffs brought a *Bivens* claim and an FTCA claim arising out of allegedly unlawful searches executed by Drug Enforcement Administration agents. The Second Circuit reversed the District Court's grant of summary judgment on the *Bivens* claim to the defendants because the Court found that there were disputed issues of fact concerning the reasonableness of the searches. With respect to the FTCA claim, the Second Circuit agreed that 28 U.S.C. § 2674 made the agents immune from tort liability, since it was undisputed that the agents had acted within the scope of their employment. However, the Second Circuit reversed the District Court's dismissal of the FTCA claim against the United States in light of the unresolved fact issues surrounding the searches. *Id.* at 607–09. The Court also observed, without undertaking any analysis, that with respect to executive branch employees, "the United States does not have the

---

2. *Bivens* and § 1983 cases are the only cases which discuss in detail the nature of prosecutorial immunity, and therefore we turn to them for guidance.

3. *Barbera v. Smith,* 654 F.Supp. 386 (S.D.N.Y. 1987) does not stand for the contrary, as the conduct of the prosecutor in that case was not

"so 'intimately associated with the judicial phase of the criminal process' " so as to merit absolute immunity. *Barbera v. Smith,* 836 F.2d 96, 101 (2d Cir.1987), *cert. denied sub nom., Barbera v. Schlessinger,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989).

advantage of any defense of official immunity which the employee might have had...." *Id.* at 609.

We do not believe that by making this observation the Second Circuit meant to imply that in FTCA cases involving federal prosecutors carrying out their duties in judicial proceedings in the Courts of the United States, the United States may not assert the absolute prosecutorial immunity described in the legislative history of the 1988 amendments to the FTCA. Indeed, not surprisingly, since the case before it did not involve the actions of a federal prosecutor, the *Rivera* Court nowhere in its decision made reference to the legislative history of the 1988 amendments to the FTCA, or to prosecutorial immunity. Moreover, to the extent that the Second Circuit's statement can be read as implying that prosecutorial immunity is not available to the United States in the FTCA context, the statement appears to be dictum. In sum, we do not find that the decision in *Rivera* mandates that we deny absolute immunity to the United States in a case such as this, where the asserted tortious conduct occurred during the course of a prosecution, directly implicating the prosecutorial immunity for the United States contemplated by Congress.

### Conclusion

Accordingly, the Government's motion for summary judgment is granted, and the Clerk of the Court is directed to enter judgment in the favor of the defendant.

SO ORDERED.